IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

TONI BARBER, an individual,

Plaintiff,

v.

REVIVE ORGANICS, INC., d/b/a Revive Superfoods, MISKI ORGANICS SUPERFOODS, INC., AND JOHN DOE IMPORTERS AND SUPPLIERS 1-10,

Defendants.

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Civil Action No.:

0:23-cv-5665-SAL

## INTRODUCTION

Plaintiff Toni Barber, by and through her attorneys, Brett Dressler of Sellers Ayers Dortch Lyons and William D. Marler, Esq. of Marler Clark, Inc., PS (*pro hac vice* pending), alleges upon information and belief as follows:

## PARTIES

1.1 Plaintiff Toni Barber is a resident of Rock Hill, South Carolina, in the County of York, and is therefore a citizen of the State of South Carolina.

1.2 Plaintiff purchased and consumed a toxic, adulterated, and/or contaminated food product, namely smoothies, prepared, manufactured, packaged, distributed, and/or sold by Defendant Revive Organics, Inc., d/b/a Revive Superfoods (hereinafter "Revive Superfoods").

1.3 Defendant Revive Superfoods is incorporated in Canada, with its headquarters and principal place of business located at 2650 Bristol Circle, Suite 500, Oakville, Ontario L6H 6Z7, and is therefore a citizen of a foreign country.

1.4 Revive Superfoods prepared, manufactured, packaged, distributed, and/or sold a toxic, adulterated, and/or contaminated food product, namely "Revive Superfoods Smoothies" to

Plaintiff, with knowledge that its product would be distributed into the interstate marketplace in the United States, including to consumers in the State of South Carolina. On information and belief, Revive Superfoods also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

1.5 Defendant Miski Organics Superfoods, Inc. (hereinafter "Miski Organics") is incorporated in Canada, with its headquarters and principal place of business located at 70 Ellis Dr., Unit 8, in Barrie, Ontario L4N 8Z3, and is therefore a citizen of a foreign country.

1.6 Miski Organics "is a proudly (sic) family-owned Canadian company with Peruvian roots," according to statements on its website[1]. Miski Organics is in the business of, among other things, sourcing and importing healthy food products from Peru. The website continues:

> Miski Organics provides nutrient-rich, certified organic, non-GMO, gluten free products to support peoples' (sic) health. Our product line includes Andean Grains and Seeds, Dried Superfruits, Raw Dried Superfoods, Raw Cacao and Derivates – all sustainably grown and cultivated in Peru. By sourcing from local farmers in the coastal valleys, Andean mountains and Amazon region of Peru[.]

1.7 Miski Organics prepared, manufactured, packaged, imported, distributed and/or sold a toxic, adulterated and/or contaminated food product, namely tara flour, to Defendant Revive Superfoods, who utilized the flour to manufacture the toxic, adulterated, and/or contaminated smoothie products that are the subject of this action.

1.8 At all material times relevant, Miski Organics prepared, manufactured, distributed, and sold food products to a customer base that spans the continent of North America, including, on information and belief, customers in the State of South Carolina. Miski's website states as follows: "Our customers include health-conscious consumers, retailers, distributors, and food and beverage companies across North America." Therefore, Miski Organics had a continuous and

[1] *See* miskiorganics.com.

systematic contact with the State of South Carolina through its distribution and sale of food products, including the tara flour product that is the subject of this lawsuit, to customers in the State, and, as such, is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(a) because the matter in controversy exceeds $75,000.00 exclusive of interest and costs and it is between citizens of the United States and a foreign country, namely Canada.

2.2 Venue in the United States District Court for the District of South Carolina is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district.

## FACTUAL BACKGROUND

3.1 Defendant Revive Superfoods was founded in 2018 and is one of the largest direct-to-consumer food brands that operate in the United States.

3.2 Revive Superfoods's self-described mission is to "provide accessible superfoods that are sustainably sourced without compromising taste and price".[2]

3.3 Revive Superfoods' products are marketed (quoting from its own website) as "chef-crafted super meals that are cost-effective and ready-to-eat in minutes." The product recipes include "pre-portioned, flavorful superfood smoothies, meals, oats, soups, and falafel pops."[3]

3.4 Revive Superfoods purports to "use simple, honest ingredients that are flash-frozen at peak nutrition and are available in convenient on-the-go cups".[4]

---

[2] Revive Foods, *Our Story*, *https://revivesuperfoods.com/about/ (Last accessed July 21, 2022).*
[3] *Id.*
[4] *Id.*

3.5 Revive Superfoods is subscription-based and offers monthly and weekly plans that allow customers to order their choice of pre-portioned items from a set menu of options. Customers can build their own custom box and select 9, 12, or 24 cups per week or 12 or 24 cups per month.[5]

3.6 On information and belief, in addition to the Plaintiff, numerous people across the United States have developed an illness syndrome identical or substantially like the Plaintiff's after consuming Defendant Revive Superfoods' Smoothies.

3.7 On information and belief, these people have no shared exposures other than the consumption of the Revive Superfoods Smoothies.

3.8 On information and belief, all the people who fell ill after consuming Revive Superfoods Smoothies, including the Plaintiff, consumed Revive Superfoods' Mango & Pineapple Smoothie.

3.9 The ingredients used in Revive Superfoods' Mango & Pineapple Smoothie are:[6]

- Mango
- Banana
- Mango Powder
- Camu Camu
- Pineapple
- Tara Protein
- Lime Extract

3.10 According to the U.S. Food and Drug Administration, on June 19, 2022, Daily Harvest Inc., a direct-to-consumer food brand like Defendant Revive Superfoods, voluntarily

[5] *Id.*
[6] Revive Foods, Smoothies, https://revivesuperfoods.com/about/ (Accessed July 4, 2022).

recalled approximately 28,000 units of their French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022.

3.11 The recall followed more than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles. The illnesses reported by the consumers of the Daily Harvest French Lentil + Leek Crumbles were similar to those reported by persons who fell ill after consuming Defendant Revive Superfoods' Smoothies.

3.12 The ingredients used in Daily Harvest's French Lentil + Leek Crumbles are[7]:

- French Lentil
- Butternut Squash
- Hemp Seed
- Quinoa
- Cremini
- Tara

3.13 The only common ingredient between the Daily Harvest's French Lentil + Leek Crumbles and Defendant Revive Superfoods' Mango & Pineapple Smoothie, both which caused similar gastrointestinal complications, is tara. Tara is a shrub or tree from Peru used by Daily Harvest and Defendant Revive Superfoods as a plant-based source of protein in their respective French Lentil + Leek Crumbles and Mango & Pineapple Smoothie products.

3.14 On July 19, 2022, Daily Harvest issued a communication to its customers advising that, following their internal investigations, they identified tara as the cause of the illnesses linked to their French Lentil + Leek Crumbles product.

[7] Daily Harvest, https://www.daily-harvest.com/ (Accessed July 3, 2022).

3.15 On information and belief, the only product by Defendant Revive Superfoods that contained tara flour was the Mango & Pineapple Smoothie.

3.16 Revive Superfoods has since discontinued the sale of its Mango & Pineapple Smoothies, and discontinued the sale of only this specific product. Unlike Daily Harvest, however, Revive Superfoods never recalled its contaminated Mango & Pineapple Smoothies.

**Plaintiff's Illness**

4.1 On November 9, 2022, Toni began integrating Revive's fruit smoothies, including Revive's Mango & Pineapple Smoothie, into her Med-Weight loss regimen, following the guidance of her nutritionist. Toni made the dietary adjustment with the belief that she was making a health-conscious choice.

4.2 A few days later, on November 14, 2022, Toni felt a bit nauseous, and the only thing she could manage to consume was another fruit smoothie. By 6 PM, Toni began to vomit and experienced significant abdominal discomfort. The intensity of her symptoms prompted her to drive herself to the emergency room, as she sensed that something was seriously wrong.

4.3 On her way to the emergency room, Toni pulled over twice so she could heave and vomit on the side of the road. By the time she arrived at Atrium Hospital Emergency Department, she was dry heaving and crying uncontrollably.

4.4 The ER physician assessed Toni's vital signs and conducted tests before admitting her. The next day, Toni was transferred to a surgery holding room at Atrium Hospital via ambulance because her condition had deteriorated to the point where her doctor believed emergency surgery may be necessary. Toni continued to experience persistent nausea, and over the course of the following three days, she underwent multiple CT scans and an MRI.

4.5 It was not until Friday, November 18, 2022, that Toni was ultimately released from the hospital, five days after her admission. During her hospitalization, she underwent numerous blood draws, resulting in her arms displaying purple and blue marks. She also developed jaundice, experienced extreme fatigue, nausea, a fever, and a loss of appetite throughout her stay.

4.6 Even though Toni had returned home, her ordeal was far from over. She was unable to resume work for a week due to severe itching that had developed.

4.7 Toni continues to suffer from her symptoms, following her consumption of Defendant Revive Superfoods' Smoothies. Toni has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; has missed, and will likely miss in the future, work and time necessarily dedicated to advancement in her profession; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

## CAUSES OF ACTION

### Strict Liability – Count I

5.1 Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 4.7.

5.2 At all times relevant hereto, the Defendants prepared, manufactured, packaged, distributed, and/or sold the contaminated food product that was purchased and consumed by Plaintiff.

5.3 The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective or unreasonably dangerous for its ordinary and expected use by the intended

public, including Plaintiff, because Defendants' product was contaminated by a substance injurious to human health.

5.4 The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

5.5 The Defendants owed a duty of care to the public, including Plaintiff, to prepare, manufacture, package, distribute and/or sell food that was not toxic and/or otherwise contaminated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The Defendants breached this duty.

5.6 The Defendants owed a duty of care to the public, including Plaintiff, to prepare, manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer. The Defendants breached this duty.

5.7 As a direct and proximate result of the defective or unreasonably dangerous condition of the contaminated food product that the Defendants prepared, manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Breach of Warranty – Count II**

5.8 Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.7.

5.9 The Defendants are liable to Plaintiff for breaching express and implied warranties that they made regarding their food product that Plaintiff purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared, manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise toxic, adulterated, contaminated, or injurious to health.

5.10 The toxic, adulterated, and/or otherwise contaminated food that the Defendants sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11 The toxic and/or otherwise contaminated food sold to Plaintiff was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

5.12 As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Negligence – Count III**

5.13 Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.12.

5.14 Defendants owed to Plaintiff a duty to use reasonable care in the preparation, manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would be toxic and/or otherwise become contaminated with any dangerous pathogen. Defendants, however, breached this duty and were therefore negligent.

5.15 Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.16 Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, packaging, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.17 Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

5.18 As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Negligence *Per Se* – Count IV**

5.19 Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.18.

5.20 Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of South

Carolina's Food and Cosmetic Act (§§ 39-25-10 – 39-25-210) and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21 In breach of this duty, Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their preparation, manufacture, distribution, packaging and/or sale of adulterated food.

5.22 As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

6.1 Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial. These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

7.1 Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A. Ordering a judgment against Defendants, jointly and severally, as compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of the Defendants's conduct.

B. Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C. Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: November 6, 2023
Rock Hill, South Carolina

**SELLERS AYERS DORTCH LYONS**

By: /s/ Brett Dressler
Brett Dressler
301 S. McDowell St, Suite 410
Charlotte, NC 28204
Telephone: 704-377-5050
bdressler@sellersayers.com

*Attorney for Plaintiff*